NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM ROBERT PILKEY, | : |  |
|  | : | Civil Action |
| Plaintiff, | : | 05-5418 (JBS) |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| LAPPIN, H. et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**APPEARANCES:**

WILLIAM ROBERT PILKEY, pro se
#06633-081
Federal Prison Camp
1900 Simler Avenue
Big Springs, Texas 79720

**SIMANDLE, District Judge:**

Plaintiff William Robert Pilkey (hereinafter "Plaintiff") currently confined at the Federal Prison Camp, Big Springs, Texas, seeks to bring this action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915.  The Complaint was received on November 17, 2005, and an Order was entered on January 12, 2006, dismissing the case without prejudice due to Plaintiff's failure to submit proof of indigency in support of his application to proceed in forma pauperis.  Plaintiff moved for reconsideration on February 8, 2006 and submitted the required documentation.  The Court will set aside the January 12th Order and consider the case anew, because Mr. Pilkey was

Dockets.Justia.com

unaware of this Court's prior Order, filed December 6, 2005
[Docket Item 2] which had required him to either remit the $250
filing fee or submit an institutional account statement within 30
days.  He had been transferred from Fort Dix to the Federal
Prison Camp at Big Springs, Texas, on December 6th and the Court
was unaware of his new address.

Under these circumstances, the Court will vacate the
dismissal order and restore this case to the active docket for
preliminary screening under 28 U.S.C. §§ 1915(e)(2)(B) and
1915A(b).

Plaintiff submitted his (1) affidavit of indigence and
institutional account statement pursuant to 28 U.S.C. § 1915(a)
(1998); (2) his complaint (hereinafter "Complaint"); (3) a
memorandum of law (hereinafter "Memorandum"); and (4) various
attachments and exhibits.[1]  Based on his affidavit of indigence
and the absence of three qualifying dismissals within 28 U.S.C. §
1915(g), as of the date of this Opinion and accompanying Order,
the Court will grant plaintiff's application to proceed in forma
pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the
Clerk of the Court to file the Complaint.  After thoroughly

---

[1] Plaintiff's instant Complaint was received by this Court
November 9, 2005.  Also, on the very same day, this Court
received three other complaints from Plaintiff.  See Pilkey v.
Lappin, 05-5314, Pilkey v. Lappin, 05-5417, and Pilkey v. Lappin,
05-5419.  Another complaint by Plaintiff was received by the
Court on October 24, 2005.  See Pilkey v. Monmouth County
Correctional Institution, 05-5073.

examining Plaintiff's submission, this Court dismisses
Plaintiff's Complaint for failure to state a claim upon which
relief may be granted, but without prejudice to Plaintiff's right
within 30 days to amend his Complaint to assert that he had
timely filed an administrative tort claim and exhausted his
administrative remedies with respect to his manuscript, if such
be the case.

### STANDARD OF REVIEW

In 1996, Congress enacted the Prison Litigation Reform Act
("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and
Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321
(April 26, 1996).  Congress's purpose in enacting the PLRA was
"primarily to curtail claims brought by prisoners under 42 U.S.C.
§ 1983 and the Federal Tort Claims Act . . . many of which are
routinely dismissed as legally frivolous." Santana v. United
States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the
congressional plan for curtailing meritless prisoner suits is the
requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b),
that a court must dismiss, at the earliest practicable time, any
prisoner actions that are frivolous or malicious, fail to state a
claim, or seek monetary relief from immune defendants.  However,
in determining the sufficiency of a complaint, the Court must be
mindful to construe it liberally in favor of the plaintiff. See

Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.  Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

## BACKGROUND

Plaintiff's Complaint expressly lists the following as the issue to be resolved: "Issue.  Whether the staff of the Bureau of Prisons denied Plaintiff access to the Court by refusing to give Plaintiff his legal paperwork while [Plaintiff was confined] in the special housing unit (SHU)."  See  Compl. at 2.  It appears, however, that Plaintiff raises various other claims that could be roughly subdivided into three groups: (1) theft of Plaintiff's property; (2) Plaintiff's right to practice his vocation of

choice; and (3) denial of access to the courts to Plaintiff.[2]
See generally, Compl.

## DISCUSSION

### A.    Access to the Courts

It appears that Plaintiff raises three different sub-types of access-to-the-courts claim.  Specifically, Plaintiff's Complaint asserts that Plaintiff's rights were violated by (1)

---

[2] Plaintiff's Complaint includes numerous dialogues between Plaintiff and various prison officials reproduced allegedly verbatim.  In addition, the Complaint details Plaintiff's thoughts, poses rhetorical questions and occasionally detours into Plaintiff's streams of consciousness.  Therefore, this Court is frequently bewildered as to whether certain statements made in Plaintiff's voluminous submission should be construed as Plaintiff's allegations that Plaintiff's constitutional rights were violated.  For instance, Plaintiff quotes statement allegedly made by Lieutenant Lewars to Plaintiff, see Compl. at 4-7 ("[Y]ou are starting to be a pain in my ass, don't you understand I don't have your F - - k - - - property," "Pilkey, you live in a glass house and you['re] throwing rocks," "So, you are calling me a liar!" "[W]ill you now stop calling me names and writing cop-outs?") (capitalization and substitution of letters for dashes in original), and describes the emotions as perceived by Plaintiff, see Compl. at 6 ("{Plaintiff] merely stood there still handcuffed," "Mr. Lewars was extremely mad," "[T]hings were getting out of hand and could easily erupt"), leaving this Court to guess whether Plaintiff asserts that the statements made or the emotions at issue amounted to a constitutional violation.
    While this Court construes every statement made by Plaintiff liberally in accordance with the holding of Haines v. Kerner, 404 U.S. 519, and its progeny, and, thus, examines every statement made by Plaintiff to detect whether a violation of Plaintiff's constitutional rights took place, this Court--in the interests of judicial economy--limits its review to the issues that have not been already treated by this Court in the Court's previous opinions addressing Plaintiff's other submissions.  Consequently, with respect to the above-mentioned statements of Lieutenant Lewars, Plaintiff is referred to this Court's Opinion in Pilkey v. Lappin, 05-5417, which examined, inter alia, similar statements allegedly made by Lieutenant Lewars to Plaintiff.

extraction of two different types of Plaintiff's "legal paperwork," and (2) inadequacy of Fort Dix law library.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  See Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and

in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996). Thus, a prisoner alleging a violation of his right of access (1) must demonstrate that a non-frivolous legal claim had been frustrated or impeded; and (2) must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue a claim or defense. See <u>Lewis</u>, 518 U.S. at 348-51, 354-55; <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).

### 1. Extraction of Plaintiff's Legal Paperwork with Regard to Plaintiff's § 2255 Application

This particular access-to-the-courts claim is based on the fact that, upon Plaintiff's placement in the Special Housing Unit (hereinafter "SHU") on May 11, 2004, Plaintiff was restricted from using some of his possessions while he was to remain in the SHU; among these possessions was Plaintiff's paperwork that he had intended to use as part--or for the purposes--of filing his 28 U.S.C. § 2255 motion to the United States District Court for the Eastern District of Tennessee, that is, the court that convicted and sentenced Plaintiff to his current term of imprisonment. See <u>id.</u> at 4, 39. Plaintiff asserts that Plaintiff's § 2255 motion had to be filed by October 6, 2004, in order to meet the limitations period requirement. See <u>id.</u> at 4,

40.  Plaintiff further asserts that, after Plaintiff made
numerous demands for return of this paperwork, the paperwork was
returned to Plaintiff on September 17, 2004.  See id. at 6.

> [Plaintiff] took the legal work for [his] [§] 2255
> [motion] back to [Plaintiff's] cell on September 17,
> 2004[.  Plaintiff] filled out, in pencil, the
> preprinted form for a § 2255 [motion] and mailed it to
> the [Eastern District of Tennessee].  The 28 U.S.C. §
> 2255 brief still had to be finished. [Plaintiff] wrote,
> in pencil, from memory[,] the remainder of the brief.
> [Plaintiff] mailed the brief out sometime in October
> and [he] got it back around the middle of October 2004.
> Finally[, Plaintiff] sent the completed brief to
> [Eastern District of Tennessee] as an addendum to the
> preprinted form § 2255.  The [Eastern District of
> Tennessee] allowed portions of the brief, but not all
> of the brief, because the [Eastern District of
> Tennessee] said [part of Plaintiff's "addendum"] was
> time barred for missing the October 6, 2004, deadline.

Compl. at 7.

     Plaintiff's Complaint concludes this part of his assess-to-
courts claim by stating:

> The F.C.I. Fort Dix staff denied [Plaintiff] access to
> [courts] causing [Plaintiff] a tremendous delay.  They
> directly cause[d the Eastern District of Tennessee] to
> deny some of the issues [raised in Plaintiff's] 28
> U.S.C. § 2255 [motion], as a result of not getting the
> issues to the [Eastern District of Tennessee] in a
> timely fashion. . . .  Plaintiff is asking for five
> million dollars (5,000,000.00) in compensation[] for
> the freedom that . . . Plaintiff did not have a chance
> to win back because of the impediment created by Fort
> Dix staff.

Id. at 8-9.

     Finally, Plaintiff attached, as one of his exhibits, a
memorandum order issued by Judge Curtis L. Collier at the United
States Court for the Eastern District of Tennessee specifically

addressing the events at issues.  The gist of the order could be summarized as follows:

> Pilkey filed [his] § 2255 motion on September 17, 2004. The next month, using a preprinted form petition, he submitted another . . . § 2255 motionand an accompanying brief.  In these [later] submissions, Pilkey did not refer to [his] earlier . . . § 2255 motion nor indicated that these later filings were offered as amendments to the earlier case. Accordingly, the latter filings were opened as a brand new § 2255 case.  . . .  Pilkey now explains that he did not intend to file a second § 2255 motion, but meant to file "an Addendum to his first § 2255 Motion" . . . .  The Court interprets Pilkey's statement as indicating that his second filing was meant to be amendments to the original § 2255 motion filed in September. . . .  Therefore, the Court . . . consolidate[s both Pilkey's filings, examines Pilkey's amendments under the "relation back" doctrine articulated in <u>Anthony v. Cambra</u>, 236 F.3d 568, 576-78 (9th Cir. 2000), and allows three out of four] proposed amendments to [Pilkey's] original claims of ineffective assistance of counsel[, namely] (1) "counsel failed to ascertain 'transactional immunity' . . . ."; (2) counsel "failed to dispute, challenge drug type, drug quantity . . ."; [and] (3) counsel "failed to address two level enhancement per U.S.S.G. § 2D1.1(b)(1), [but denies Pilkey his amendment stating that Pilkey's] counsel failed to assert these issues under the authority of <u>Blakely v. Washington</u>, 124 S. Ct. 2531[3] . . . , which amounted to a constructive denial of counsel, [since this new allegation] does not relate back to any claim in the original petition [filed by Pilkey in September].  This untimely amendment is not allowed.

---

[3] It shall be noted that (1) <u>Blakely v. Washington</u>, 542 U.S. 296 was decided on June 24, 2004, long after Plaintiff was convicted and sentenced, and even after Plaintiff was committed to the SHU confinement, but prior to lapsing of the period of limitations applicable to Plaintiff's filing of his § 2255 motion; and (2) the holding of <u>Blakely</u> is not retroactively applicable to initial habeas petitions in any court, including the Eastern District of Tennessee.  <u>See</u>, <u>e.g.</u>, <u>Llioyd v. United States</u>, 407 F.3d 608 (3d Cir, 2005); <u>see also</u> Collins <u>v. United States</u>, 2006 U.S. Dist. LEXIS 21174 (E.D. Tenn. Mar. 24, 2006).

<u>Pilkey v. United States</u>, 1:04-CV-289 (E.D. Tenn. Mar. 2005),

<u>reprinted</u> <u>in</u>, Compl. at 39-42.

Plaintiff's allegations, as they appear from Plaintiff's submission,[4] fail to state a violation of Plaintiff's access-to-the-courts rights.  It appears undisputed that Plaintiff could and did file his § 2255 application on September 17, 2004, and did so within the limitations period.  The fact that Plaintiff decided to submit a "legal brief" or an "amendment" at a later point is of no consequence.  Nothing in the language of Section 2255, or the case law interpreting 28 U.S.C. § 2255,[5] requires or even indirectly indicates that a petitioner is obligated or expected to file a legal brief.[6]  Similarly, the fact that

---

[4] A careful reader of this Opinion should have little trouble noticing that the factual statements made by Plaintiff in the body of Plaintiff's Complaint are in substantial contradiction with those made in the order issued by Judge Collier and attached by Plaintiff as an exhibit.  However, for the purposes of this Court analysis, these differences are not crucial, and the outcome of this Court's inquiry is the same regardless of whether the Court is to employ Plaintiff's or Judge Collier's version of the events.

[5] Section 2255 provides that, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255.

[6] To the contrary, the preprinted form expressly urges petitioners *not* cite any statutory authority or any case law. Moreover, at any point in time *after* filing a § 2255 application,

Plaintiff decided to raise a <u>Blakely</u> claim in his October submission is in no way related to the fact that Plaintiff's "legal paperwork" was out of Plaintiff's possession, since (if Plaintiff wished to raise his <u>Blakely</u> claim in the documents Plaintiff sent to the Eastern District of Tennessee in September) lack of Plaintiff's "legal paperwork" did not prevent Plaintiff from doing so, as <u>Blakely</u> did not yet exist. Thus, nothing in Plaintiff's allegations indicates that his § 2255 legal claim had been frustrated or impeded by Plaintiff's temporary dispossession of his "legal paperwork." Finally, even if the Court is to hypothesize that, for the reasons not stated in Plaintiff's Complaint, Plaintiff's September filing was somehow impeded, thus causing Judge Collier to refuse entertaining Plaintiff's <u>Blakely</u>-based claim, this Court still cannot detect any "actual injury" caused to Plaintiff, since--had Plaintiff's September submission to the Eastern District of Tennessee included Plaintiff's his <u>Blackely</u> claim--that claim would have failed.[7] <u>See</u> <u>supra</u> note 3;

---

the presiding court may direct petitioner to file his/her brief if the court finds that such brief could be of use. <u>See</u>, <u>e.g.</u>, <u>Welch v. United States</u>, 134 F. Supp. 2d 741, 743 (W.D.N.C. 2001) ("The Court adopted the Magistrate Judge's recommendations and directed the Petitioner to file a brief discussing any grounds [the Petitioner] might raise [in support of her § 2255 application]").

[7] Plaintiff's allegations are particularly bewildering in view of Plaintiff's desire to rely on the <u>Blakely</u> holding *not* for the purposes of challenging Plaintiff's sentence or conviction, but for the purposes of alleging "ineffective assistance of counsel," that is, in order to claim that Plaintiff's trial counsel failed to rely on the holding of <u>Blakely</u> *before* <u>Blakely</u>

accord <u>Lewis</u>, 518 U.S. at 348-51, 354-55; <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997); <u>cf.</u> <u>Love v. Coughlin</u>, 714 F.2d 207 (2d Cir. 1983) (dismissing an access-to-the-courts claim alleging loss of two of inmate's three duffel bags containing legal documents and communications pertaining to four civil and two criminal lawsuits); <u>Morello v. James</u>, 627 F. Supp. 1571 (W.D.N.Y. 1986) (finding no constitutional violation of an inmate's rights when officers confiscated inmate's legal papers during his transfer to a correctional facility and lost two folders containing documents professionally prepared by legal assistants).

## 2.    **Extraction of Plaintiff's Other Legal Paperwork**

There appears to be another, although vaguely stated, Plaintiff's access-to-the-courts claim related to Plaintiff's "legal paperwork."  The sole mentioning of that claim reads as follows:

> [T]he B.O.P denied [P]laintiff[] access to the court[s] by not returning his legal work pertaining to the forfeiture that was imposed upon . . . [P]laintiff. [I]n . . . [P]laintiff's legal work [were] the court documents that had been answered by U.S. [D]istrict Court Judge Curtis Collier.  Some of [P]laintiff's property was returned, but he never got a chance to respond to the Judge to have someone to go pick up the property. [P]laintiff's car was t[a]ken, a 1999 Lincoln

_____

was decided, in other words, in order to claim that Plaintiff's counsel was  either (a) "ineffective" in being clairvoyant about future Supreme Court's decisions; or (b) failed to make a claim, which, at the time of Plaintiff's trial, was stripped from any legal precedent.

Cartier worth 26,000.00 dollars and the cash that was
taken 2,400.00 dollars.

Compl. ("Argument on Behalf of Plaintiff") at 28.

This allegation fails to state an access-to-the-courts claim
since, if Plaintiff's property had been adjudicated by Judge
Collier as either duly or wrongfully forfeited, no "pick-up
notice" was due to Judge Collier: Judge Collier could not
possibly be in personal possession of Plaintiff's property, plus
the Judge had already performed his judicial duties, the access
to which is in the heart of access-to-the-courts rights.  Since
Plaintiff's assertions fail to indicate that Plaintiff's ability
to submit his property-related claim *for adjudication* was ever
frustrated one way or the other, Plaintiff's access-to-the-courts
rights were neither violated nor even implicated by the events
asserted in the Complaint.  <u>Accord</u> <u>Lewis</u>, 518 U.S. at 348-51,
354-55; <u>Oliver</u>, 118 F.3d at 177-78.

### 3.    <u>Inadequacy of Law Library</u>

Another access-to-the-courts claim appears to be based on
inadequacy of law library, or law library hours, at the S.H.U. of
the F.C.I. Fort Dix.  With respect to this claim, Plaintiff makes
the following statements: (1) during his confinement in the SHU,
Plaintiff "got to use the law library 12 days for 15 hours out of
[the total of] 171 days" that Plaintiff was in the SHU, Compl. at
5, (2) "[t]he [l]ibrary in the SHU [was] not adequate because it
contain[ed only] one set of U.S.C. annotated books and one set of

13

Supreme Court decisions.  All in all, there may be 100 books in the SHU library.  No [digests], no Shepard books, no American Jurisprudence . . . , no Federal Supp. Books, no F.3d books, no F.2d books, absolutely nothing that could help an inmate complete a brief in less than three weeks." Id. at 8.

These allegations fail to state a claim upon which relief may be granted.  The Supreme Court has explained that a plaintiff alleging denial of access to the courts must show not mere inadequacy of the legal materials available to the plaintiff, but also that "the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim."[8] Lewis v. Casey, 518 U.S. 343, 351 (1996).  There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense [since] the Constitution does not require that

_____

[8] The inquiry is, therefore, case-specific.  See Brown v. Sielaff, 363 F. Supp. 703, 704 (W.D. Pa. 1973) ("Plaintiffs seek to bring their action . . . alleging that[,] because of the lack of up-to-date law books in the prison library, they are denied access to the courts.  If such a proposition were so, one would not know it by viewing the record of Plaintiffs" who managed to file over the years three dozen legal actions).  In that respect, the Court notes that Plaintiff in the instant case filed five legal actions with this Court (in addition to his direct appeals, § 2255 application and challenge to forfeiture of his property filed in the Sixth Circuit).  The five civil actions filed by Plaintiff with this Court contain the total of 16 Supreme Court citations, 32 circuit courts citations and 37 district court citations, and 12 citations to state decisions at various levels, the total of 97 legal citations.

prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts -- a more limited capability that can be produced by a much more limited degree of legal assistance." Id. at 351, 360; accord Free v. Federal Bureau of Prisons, 2000 U.S. App. LEXIS 12564 (10th Cir. 2000) (dismissing inmate's access-to-the-courts suit as frivolous where the inmate alleged that inadequacy of the prison law library made it "difficult" for him to pursue his 28 U.S.C.S. § 2255 motion); White v. Gregory, 87 F.3d 429 (10th Cir. 1996) (an inmate asserting that, being a member of general inmate population, he was restricted to two hours per week of library time failed to state a constitutional claim); Lunney v. Brureton, 2005 U.S. Dist. LEXIS 770 (S.D.N.Y. Jan. 21, 2005) (dismissing inmate's claim expressly addressing  inadequacy of "mini-library at the SHU" and clarifying that "if an inmate experienced delays in pursuing a civil claim, but files acceptable legal pleadings within court deadlines, he cannot claim that he was prejudiced by shortcomings in a prison facility's law library, because he has sustained no relevant actual injury") (citing Benjamin v. Kerik, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000), aff'd, Benjamin v. Fraser, 264 F.3d 175 (2d Cir. 2001), and Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996)); Geder v. Roth, 765 F. Supp. 1357 (N.D. Ill. 1991) (dismissing an access-to-the-courts claim where an inmate was

allowed access to law library for the total of five times, two hours each time, since the restrictions on the inmate's access to the library did not prejudice his ability to prepare court documents because these documents did not require legal research).

In the case at hand, Plaintiff did file his § 2255 application timely and, thus, suffered no actual injury. Moreover, Plaintiff needed to conduct very limited legal research, if any, in order to complete his preprinted § 2255 form.  Finally, the sources of Fort Dix SHU mini-library appear to be sufficient to satisfy the needs of Plaintiff during the time when Plaintiff was a member of the limited population of inmates confined at the SHU, especially in view of the fact Plaintiff spent a relatively short period of time in SHU confinement.  Therefore, Plaintiff access-to-the-courts allegations based on inadequacy of law library fails to state a cognizable claim.

**B.    Claims Related to "Jailhouse Lawyer" Discussion**

There are numerous statements in Plaintiff's Complaint made under the umbrella of the "Jailhouse Lawyer" theme.  These statements are scattered between chapters of Plaintiff's Complaint and advocate for an inmate's right to *provide* legal services to co-inmates but cite legal authorities addressing an

inmate's right to *receive* legal services from a co-inmate.[9]  It appears, however, that Plaintiff's "jailhouse lawyer" claim is limited to that raised on behalf of Plaintiff's co-inmates alleging violation of the co-inmates' right to *receive* Plaintiff's legal assistance.[10]  <u>See</u> Compl. at 12-26.

_____

[9] These are titled as follows: (a) "How May Prison Officials Restrict the Jailhouse Lawyer"; (b) "Who May Act as the Jailhouse Lawyer?"; (c) "Which Inmates Are Permitted to Receive Legal Assistance from the Jailhouse Lawyer?"; (d) "What Type of Legal Assistance May an Inmate Receive from the Jailhouse Lawyer?"; (e) "What Is the Reasonable Alternative to the Jailhouse Lawyer?". Plaintiff's article titled "What Type of Legal Assistance May an Inmate Receive from the Jailhouse Lawyer?" (hereinafter "Article") indicates that Plaintiff took upon himself to prepare legal documents for illiterate inmates, "play[ed] a role in internal prison matters," and provided Plaintiff's own legal sources (other than those obtained from the prison library) to other inmates.  <u>See</u> Compl. at 19-21.  The article concentrates on <u>In re Harrell</u>, 2 Cal. 3d 675, 470 P.2d 640 (1970) (discussing reasonable alternative means of dealing with the undesirable conduct which do not entail so significant a restriction upon mutual prisoner assistance) and <u>Johnson v. Avery</u>, 393 U.S. 483 (1969).  _____

[10] Since Plaintiff's Complaint expressly notes that "[t]he courts have stressed that the right [associated with legal assistance to inmates] was not the privilege of the jailhouse lawyer to practice law [but] rather, it was the right of an inmate to receive legal assistance," Compl. at 17 (citing <u>Bounds</u>, 430 U.S. 817; <u>Rhodes v. Robinson</u>, 612 F.2d 766 (3d Cir. 1979); <u>Guajardo v. Luna</u>, 432 F.2d 1324 (5th Cir. 1970); <u>Delgado v. Sheriff of Milwaukee County Jail</u>, 487 F. Supp. 649 (E.D. Wis. 1980); <u>State v. Williams</u>, 226 Kan. 82, 595 P.2d 1104 (1979); <u>In re Harrell</u>, 470 P.2d 640 (Cal. 1970)), this Court concludes that Plaintiff is sufficiently clear as to lack of his right to practice law in prison as his vocation of choice.  <u>See</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, _____ (2001) (expressly stating that inmates have no First Amendment right to <u>being</u> "jailhouse lawyers").

The Court lacks jurisdiction to entertain Plaintiff's assertions on behalf of Plaintiff's co-inmates on the grounds that Plaintiff lacks standing to bring such claim.  Under the "next friend" doctrine, standing is allowed to a third person so this third person could file and pursue a claim in court on behalf of someone who is unable to do so on his or her own.  The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case in controversy" requirement set forth in the Article III of Constitution.  See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).

The Whitmore Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest"; and (2) "the 'next friend' must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action." Id. at 163-64.  The burden is on the "next friend" to justify his/her status and, thereby, to obtain the jurisdiction of the federal courts. See id. at 164.

In view of these requirements, this Court cannot recognize Plaintiff as "next fiend" of other Fort Dix inmates. This Court cannot satisfy even the first prong of the Whitmore test since the Court has no information as to what is Plaintiff's relationship to other inmates and/or whether Plaintiff is "truly dedicated to the best interests" of these other inmates. Accord Coalition of Clergy v. Bush, 310 F.3d 1153, 157-59 (9th Cir. 2002) (providing a thorough discussion of the "next fiend" caselaw and noting that there should be "a significant pre-existing relationship between the prisoner and the putative next friend"). Moreover, Plaintiff's Complaint provides this Court with no reason to conclude that other inmates at Fort Dix suffer of mental incompetence, or other disability, preventing them from appearing on their own behalf to prosecute their own actions. Therefore, Plaintiff's "jailhouse lawyer" claim raised on behalf of other inmates is dismissed for lack of standing.

## C.  **Extraction of Plaintiff's Manuscript**

The final claim detected by this Court in Plaintiff's present Complaint relates to what appears to be Plaintiff's manuscript. The four statements related to the holograph read as follows:

> [O]n September 15, 2004, a lady from the [BOP's] legal department . . . came by with another staff member. . . . [When, on September 17, 2004, this] lawyer . . . arrived[, Plaintiff] was taken to the law library. The lawyer was waiting in the law library with [P]roperty C.O. Cond. We immediately opened the property bag with

19

[Plaintiff's] name on it and started going through the
bag [looking for Plaintiff's legal documents].  In the
bag, Lt. Lewars found a book that I had written titled
["]Promises To Keep[,"] he started to read the book[,]
and [Plaintiff] very politely said to him, "[D]o not
lose that book[] because it's valuable, and[,] if it
gets lost[,] I will sue."  The lady lawyer asked to see
the book[,] and I told her the book contained explicit
writing and she may get embarrassed, she smiled.
Lieutenant Lewars disrespectfully threw the book on the
floor and continued looking through the bag.  . . .
[Plaintiff] told Lieutenant Lewars . . . not to lose or
misplace [Plaintiff's] autobiography ["]Promises To
Keep[."]  Now [Plaintiff's] trepidation has come to
fruition, the book is now missing, and [Plaintiff is]
asking the Court to award Plaintiff seven million
dollars ($7,000,000.00) for the loss of the book.  This
is calculated at one million copies sold at 47.95 a
copy minus publication fees.

Compl. at 6, 9, 28, 31.

The foregoing excerpt indicates that Plaintiff contends that

the Bureau of Prisons of the United States Department of Justice

is liable for damages under the Federal Tort Claims Act ("FTCA"),

28 U.S.C. §§ 1346(b), 2671-80, for loss of his manuscript,[11]

albeit without invoking the FTCA in his Complaint.  "It is

elementary that '[t]he United States, as sovereign, is immune

from suit save as it consents to be sued . . . and the terms of

its consent to be sued in any court define that court's

jurisdiction to entertain the suit.'"  United States v. Mitchell,

445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312

_____

[11] To the extent that Plaintiff seeks to assert that
officials deprived Plaintiff of property without due process of
law, the claim fails because the FTCA provides an adequate post-
deprivation remedy.  See Logan v. Zimmerman Brush Co., 455 U.S.
422, 437 (1982); Holman v. Hilton, 712 F.2d 854, 858 (3d Cir.
1983).

U.S. 584, 586 (1941)); <u>Federal Deposit Ins. Corp. v. Meyer</u>, 510

U.S. 471, 475 (1994).

Congress waived sovereign immunity under certain

circumstances in the Federal Tort Claim Act (hereinafter "FTCA").

The FTCA gives a district court

> exclusive jurisdiction of civil actions on
> claims against the United States, for money
> damages . . . for injury or loss of property,
> or personal injury or death caused by the
> negligent or wrongful act or omission of any
> employee of the Government while acting
> within the scope of his office or employment,
> under circumstances where the United States,
> if a private person, would be liable to the
> claimant in accordance with the law of the
> place where the act or omission occurred.

28 U.S.C. § 1346(b); <u>see</u> <u>United States v. Muniz</u>, 374 U.S. 150

(1963); <u>Deutsch v. United States</u>, 67 F.3d 1080, 1091 (3d Cir.

1995).  Cognizable claims under 28 U.S.C. § 1346(b) include those

that are

> [1] against the United States, [2] for money
> damages, . . . [3] for injury or loss of
> property, . . . [4] caused by the negligent
> or wrongful act or omission of any employee
> of the Government [5] while acting within the
> scope of his office or employment, [6] under
> circumstances where the United States, if a
> private person, would be liable to the
> claimant in accordance with the law of the
> place where the act or omission occurred.

<u>Deutsch</u>, 67 F.3d at 1091 (quoting 28 U.S.C. § 1346(b)); <u>see also</u>

<u>Federal Deposit Ins. Corp. v. Meyer</u>, 510 U.S. at 477.

The sole proper defendant on an FTCA claim is the united

States, and not its employees or officers whose conduct gives

rise to the tort claim.  A plaintiff alleging personal injury or loss of property caused by the act or omission of a federal employee acting within the scope of his employment cannot overcome the restrictions of the FTCA by filing a complaint against the individual officer or employee, because Congress has made the FTCA remedy exclusive against the United States and has precluded actions against the individual federal employee, pursuant to 28 U.S.C. § 2679(b)(1).[12]

In Mr. Pilkey's 33-page Complaint there is no indication that he has filed an administrative tort claim seeking compensation for his lost manuscript, or that he has exhausted the FTCA's remedies.  June 26, 2006A district court lacks jurisdiction over a FTCA claim where  the claimant has not exhausted administrative remedies.  <u>See</u>  28 U.S.C. § 2675(a); <u>see</u>

---

[12] The FTCA at 28 U.S.C. § 2679(b)(1) states:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.  Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

also McNeil v. United States, 508 U.S. 106 (1993); Deutsch, 67

F.3d at 1091.  Specifically, 28 U.S.C. § 2675(a) provides, in

pertinent part:

> An action shall not be instituted upon a
> claim against the United States for money
> damages . . . unless the claimant shall have
> first presented the claim to the appropriate
> Federal agency and his claim shall have been
> finally denied by the agency in writing and
> sent by certified or registered mail.  The
> failure of an agency to make final
> disposition of a claim within six months
> after it is filed shall, at the option of the
> claimant any time thereafter, be deemed a
> final denial of the claim for purposes of
> this section.

To exhaust administrative remedies on a tort claim before

the Bureau of Prisons, a federal inmate must submit his tort

claim for a sum certain to the Regional Office in the region

where the claim occurred.  28 C.F.R. § 543.31(b).  The Regional

Counsel is authorized to deny the claim, propose to the claimant

a settlement, or forward the claim with recommendations to the

Office of General Counsel.  28 C.F.R. § 543.31(d).  The General

Counsel is required to consider the merits of a claim that has

not been settled by Regional Counsel.  28 C.F.R. § 543.31(e).

Agency action is final upon either (1) the denial of a claim by

Regional Counsel or General Counsel, or (2) their failure to

finally dispose of the claim within six months from the date of

filing.  28 C.F.R. § 543.31(f), (g).

In sum, the requirements that a claimant timely present his claim, and that he do so in writing and for a sum certain are jurisdictional prerequisites to a suit in the district court. McNeil, 508 U.S. at 113; Deutsch, 67 F.3d at 1091.

In this case, the Court lacks jurisdiction over Plaintiff's FTCA claim because there is no indication that Plaintiff filed a claim with respect to loss or destruction of his manuscript, or that he exhausted his administrative remedies under the FTCA. Plaintiff merely recognized that his "trepidation has come to fruition." Therefore, this Court dismisses Plaintiff's federal tort claim for lack of jurisdiction.  See McNeil, 508 U.S. at 113; Deutsch, 67 F.3d at 1091.

This dismissal is without prejudice to Plaintiff's right to amend his complaint, within thirty (30) days, if in fact he had already timely filed his FTCA claim with the Bureau of Prisons and exhausted his FTCA remedies, consistent with the foregoing.[13]

---

[13] Plaintiff is advised of the time for commencing a tort action against the United States, its officials, or employees acting within the scope of their employment, which is given by 28 U.S.C. § 2401(b) as follows:

> (b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of  notice of final denial of the claim by the agency to which it was presented.

**CONCLUSION**

For the foregoing reasons, Plaintiff's application to proceed in forma pauperis is hereby GRANTED.  Plaintiff's Complaint will be dismissed with prejudice for failure to state a claim upon which relief may be granted, lack of jurisdiction and lack of standing, except the dismissal is without prejudice as to his potential claim under the Federal Tort Claims Act; if Plaintiff is able to assert that he has filed his administrative tort claim as required and has exhausted his FTCA remedies, he may do so by filing an Amended Complaint herein within thirty (30) days, or thereafter (if timely under § 2401(b), supra) in a separate civil action in a court of competent jurisdiction.

An appropriate Order accompanies this Opinion.




                              **s/ Jerome B. Simandle**
                              JEROME B. SIMANDLE
                              U.S. District Judge


Date:      **June 28, 2006**